UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61203-CIV-SEITZ/O'SULLIVAN

ANGEL PEREZ,

     Plaintiff,

v.

BRANDS MART SERVICE
CORP.,

     Defendant.

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff, ANGEL PEREZ, by counsel, responds in opposition to Defendant's Motion for

Summary Judgment as follows:

*Introduction*

Since the ratification of the Thirteenth Amendment Americans have held to the reasoned

proposition that unless they are imprisoned they are entitled to be paid for services they perform

for an employer. The Fair Labor Standards Act protects workers by assuring them of a minimum

age, an entitlement to overtime compensation, and protection against retaliation arising from

asserting rights under the Act.

This case involves two claims. It asserts first that the Defendant did not pay for certain

work it required of Plaintiff. Secondly it seeks remedies arising out of Plaintiff's termination for

objection to the Defendant's wage practices.

These two claims are related but stand independently under the law.

*The Minimum Wage Claim*
*How Installers and Helpers Are Paid*

ANGEL PEREZ was hired as an installer's helper. His job duties were to assist an

installer   whose own job was, not surprisingly, to install consumer electronics purchased from

BRANDSMART USA.

The installer was paid on the basis of a percentage of the store sale price plus a

percentage of what additional equipment he (or presumably the helper) were able to sell the

customer once in their home. These secondary sales were never included in the helper's

compensation even though the helper would assist in the installation of the secondarily sold

equipment and the time spent installing it might delay another installation. The in-store sales

included an installation charge .

The installation charge itself is not based on a percentage of the sale price. Rather as the

Defendant has testified, "The fees charged for installation services varied depending on the

complexity of the job and the types of electronics. The stores had over two dozen different types

of installation prices, or SKUs, for installation services." (Declaration of Cosmo Adamo §5, DE

39-3)

Once the installation was complete the  installation charge, less any additional charges

from in-home sales,  was split equally between the employer and the installation "team". The

team's share (again without reference to the installers compensation for in-home sales) would

then be divided on the basis of 70/30% to the installer and helper respectively.

*The Minimum Wage Claim*
*The Commission Issue*

2

The discussion about "commissions" as presented in the Defendant's motion is somewhat of a red-herring. Most commission issues typically arise within the context of overtime claims and not for minimum wage claims as presented here.

Moreover, this case does not involve the issue of whether installers are paid commissions. There are material differences in the way BRANDSMART USA compensates installers and the way it pays helpers.

The first problem is that the payments made to the installers and helpers are made on the basis of SKU's. Although it is not asserted how the SKU's are derived, other than they are "based on complexity" as well as the "types of electronics." (Adamo Declaration).

An SKU is a "stock-keeping unit", a concept that has within it an anomaly since the sale of services ordinarily is not stock which is kept. Since there are over two dozen types of SKU for installation services, apparently those services are sold by salesmen to customers.[1] What this scheme tells us is that one ordinary indicia of a commission, a percentage of the sales price, is absent in this plan.

The reason that this is important is that in the context of overtime compensation and the outside sales exemption under §7(i) ( the retail sales exemption) courts continue to struggle as to the meaning of the term "commission." Just last year, the Seventh Circuit considered whether NutriSystem sales personnel received "commissions" from their work which in term would allow the employer to forego overtime payments. As noted this case does not involve overtime, but that case difficulty in classification of a payment as a "commission".

---

[1] According to Adamo, once the installation is complete the salesman is paid a percentage of the company's 50%.

The FLSA does not define the term "commission." The plain meaning of the term, according to Black's Law Dictionary, is "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction." Black's Law Dictionary 306 (9th ed. 2009). Section 7(i), however, requires that in order to be a commission, the fee paid to the employee must be based on a "bona fide commission rate." The "bona fide commission rate" language is imprecise and capable of ambiguity. Therefore, we hold the plain language of § 7(i) does not provide sufficient guidance to govern the application of the statute in this case. Cf. *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987) (finding that "[i]t would not be sensible to try to decide [a] case on the basis of dictionary meanings, or for that matter common legal usages, of the word 'commission.'")
*Parker v. NutriSystem, Inc.*, 620 F.3d 274, 278 (3d Cir. 2010)

Indeed the Eleventh Circuit noted ten years ago: "Whether Klinedinst's payments constituted commissions is an issue of law. Yet, it is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).

If this were an overtime case, likelihood is that the helpers plan would not qualify for the retail sales exemption. As a recent case is Vermont has observed:

In practice, courts have generally concluded that there are three components to a commission-based compensation scheme: (1) the employee's compensation must be tied to customer demand or the quantity of sales,  (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income,  and (3) there must be proportionality between the value of the goods or services sold, and the rate paid to the employee,... These three components ensure that commission-based compensation is "decoupled from the actual time worked," a characteristic that multiple circuit courts of appeals and the DOL have identified as a "hallmark" of how commissions work.
*Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 2011 U.S. Dist. LEXIS 24948, 10-11 (D.Vt. Mar. 11, 2011)

Were these principles apply the helpers compensation plan, it would fail because of the refusal to pay for secondarily or home sales, which does not provide the helper with any incentive to work more efficiently. Further, what the defendant is now calling "ancillary duties"

that of restocking shelves, pasting labels, straightening merchandise on shelves, will not put one dime in the pocket of the installer or helper.  Strangely neither the FLSA nor its regulations define "ancillary duties." However the plain meaning of words suggest that the work be related to the job duties. Thus a carpenter might care for tools, a dog handler might feed his dog, a salesman might straighten merchandise, and installer might clean his truck. Just because an employer might wish to have free labor from an installation team, if it chooses to assign unrelated duties it should compensate for  the performance those duties at at least the minimum wage. This is what PEREZ told three supervisors and the managers at Brandsmart, and it is for that he was fired.

*The Minimum Wage Claim*
*Unpaid compensation is owing*

The Defendant argues that the Plaintiff, by waiting in his truck was not preforming work and it had no obligation to pay him  It overlooks that it was at  the Defendant's direction Plaintiff reported to work. He was not free to go elsewhere. Plaintiff was entitled to be paid, no less than the minimum wage for such time.

*The Retaliation Claim*
*Saint-Gobain*

The Supreme Court addressed the issue of retaliation under the FLSA in March. Resolving a conflict among the circuits, the Supreme Court held that oral complaints were sufficient to invoke the statutory protection.

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (U.S. 2011)

The Defendant, attempting to squeeze into the holding the Defendant claims that the complaints were not understandable to it. This is an astonishing claim in which it details in its motion numerous complaints it failed to understand. For instance it failed to understand Plaintiff when he asked for pay for the days he was required to come in and wait. It failed to understand Plaintiff when he wrote "Free Labor" on his time sheets and the meetings, first with Human Resources and then with three managers on April 9, 2009. Given that it didn't understand that a reasonable person hearing "Turn in your badge. You don't work for us anymore" would think they were being let go, it is perhaps possible that no one understood that when Mr. Perez, "I won't work without being paid", he was complaining about compensation issues.

If that is the Defendant's position, then a jury clearly must determine the factual issue of whether he was sufficient clear. However, at first blush, this particular argument is absurd. Everyone knew what the issue was to the point where of its senior managers did all the talking without letting his co-mangers or Plaintiff get many words in edgewise.

*The Retaliation Claim*
*McDonnell-Douglas burden shifting*

As this court has held:

FLSA retaliation cases are analyzed according to the burden-shifting analysis employed by the courts in cases brought pursuant to Title VII of the Civil Rights Act. See e.g., *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). To make a prima facie case for retaliation under the FLSA, the plaintiff must show: 1 ) that he engaged in an activity protected by the FLSA that was known to his employer; 2) that he suffered an adverse employment action, and 3) that there is a causal connection between his participation in the statutorily-protected activity and the adverse employment action. Id. Under the burden-shifting approach, once the plaintiff has made out a prima facie case of retaliation,

the defendant must come forward with "legitimate reasons for the employment action to negate the inference of retaliation." *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993)). If the defendant demonstrates a non-discriminatory reason for the adverse employment action, the presumption of discrimination arising from the prima facie case is eliminated. At this point, the burden shifts back to the plaintiff to produce evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997). If the plaintiff fails to proffer evidence sufficient to create a genuine issue of material fact concerning whether the defendant's articulated reasons for the adverse employment action are pretextual, then the employer is entitled to summary judgment on the retaliation claim. Id.

*Vandesande v. Miami-Dade County*, 431 F. Supp. 2d 1245, 1252-1253 (S.D. Fla. 2006)

Applying Title VII retaliation principles and the burden shifting analysis of McDonnell Douglas v Green requires us to look at two issues-what is the legal standard for retaliation and what happens when the employer's theory of the case negatives any offering of a legitimate non-discriminatory reason for its action.?

These will be addressed in turn:

*The Retaliation Claim*
*The legal standard for retaliation*

Under the Title VII standard for retaliation which standard governs FLSA retaliation cases, it does not matter if an unlawful employment practice was established. What matters is whether the employee engages in protected activity which requires a good faith reasonable belief that the employer was violating the law. As the Eleventh Circuit has held:

Even if an employment practice is not as a matter of fact unlawful, a plaintiff can establish a prima facie case of Title VII retaliation "if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. . . . A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was

objectively reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)

*Dixon v. Hallmark Cos.*, 627 F.3d 849, 857 (11th Cir. 2010)

The Defendant essentially concedes that for purposes of its motion that Plaintiff has established subjective good faith. Defendant's Memorandum of Law in support of Motion for Summary Judgment (DE 39-2, page 13).

It then launches into an examination of what it calls "objective good faith" whose lynchpin is that PEREZ an installers helper is "presumed to have knowledge of the law." Defendant's Memorandum of Law in support of Motion for Summary Judgment (DE 39-2, page 14). Certainly it is well within the common knowledge of most workers that they are entitled to be paid for services they perform for employers. The level of sophistry set out by BRANDSMART USA is certainly not required of average Americans. This is particularly true when the employer did not successfully explain it's current legal position to the workers and appears to be unaware of the subtlies of the defense cobbled together by it's counsel at the time it was  rejecting Plaintiff's objections to it's practices.

It is undisputed that the Defendant did not seek legal advice before meeting with PEREZ. (Adamo deposition, DE 39-10, page 8 and Carlisle deposition, DE 39-5, page 53). Based on the lack of reliance on "advice of counsel" and Adamo's account of how the Same Day Installation project came into being, i.e. Best Buy was offering it, it is a reasonable inference that the Defendant never sought legal advice prior to implementing it.It is further undisputed that Adamo did most of the speaking during the meeting and that he did not address the legal basis for the plan. Rather he simply argued about why the plan was a good thing for BRANDSMART USA.

From Deposition of Gary Carlisle, referring to Cosmo Adamo's presentation to PEREZ:

A He [PEREZ] came in and Cosmo explained at length
what we were doing, why we were doing it, the results
we felt we were getting from it.
Q When you say at length, what we were doing
and why we were doing it, you are talking about Cosmo
was talking about the same day install program?
A Same day install program and the way that
we operated as a company, the way commission sales
worked.
Q How long did Cosmo talk?
A Pretty much the whole time.
Q He was the talker?
(Carlisle deposition, DE 39-5, page 55)

***

Q Was he explaining the pay issues relating
12 to the same day installation program?
13 A I wouldn't say that.
14 Q Did he even address the pay issues with
15 Mr. Perez?
16 A He made several comparisons to other areas
17 as far as commission salary, commissions wages.
18 Q Which areas did he --
19 A I believe he referred to real estate, I
20 believe he referred to salespeople, to any commission
21 person having other duties other than those that they
22 specifically receive funds from.
(Carlisle deposition, DE 39-5, page 56)

In view of the Human Resources Department's inability to address the complaints

PEREZ brought to them on at least two occasions, and instead obtaining to have three senior

managers gang up on PEREZ and still not explain to him the current theory as put forth by their

lawyers, there is at least a jury issue on this requirement..

The evidence establishes at the very least evidence from which a jury can find the

existence of an objective good faith belief. These reasons may be summarized as follows:

- Plaintiff addressed his objection to the Human Resources Department who had to research his objections. If these issues were not clear to the Human Resources Department in a company the size of BRANDSMART USA, they could hardly be clear to a mere installers helper.

- The employer unilaterally imposed these additional duties after PEREZ had commenced employment.

- PEREZ repeatedly addressed his opposition to the requirement that he work without compensation by submitting requests for payment, by noting "free labor" on his time sheet, and by meeting with both Human Resources and Gary Carlisle. His testimony about what Carlisle told him before the final meeting is s follows:

> Q. **What specific words did he use about what you**
> **were supposed to do, and who you were reporting to?**
> A. We have to get in the store and report with the
> sales department manager, and he would tell us what to do
> in the stores, helping them put labels on product,
> straighten out whatever they need us to do.
> And I say, even sweeping the floor? And he say,
> I don't know about that, but you got to do what they ask
> you to do. And I continue to say, how I want to get paid
> for this? And he continue to say, you won't get paid for
> that. That's part of your job.
> And I say, what happened if we spend three,
> **four, five, six,** seven hours and we go home, we don't make I
> a dime? He say, that's nature of the job.
> Other than that, he said that's part of the job.
> Sometimes you make, sometimes you don't.
> (Deposition of Angel Perez, DE 39-8, page 65)

*The Retaliation Claim*
*The defense that the Plaintiff quit precludes the Defendant from asserting*
*it has offered a legitimate non-discriminatory reason*

The Defendant's reliance on the burden shifting framework of Title VII does not mean that they are protected from a jury's consideration of a retaliation case where they do not offer, as here, a legitimate non-retaliatory reason.

As the Defendant writes in its memorandum:

> All three managers say they were surprised when Perez walked out, and did not know whether Perez was going to Human Resource to complain or to quit. (SMF ¶ 36; Adamo Dep. at12; Adamo Decl. ¶ 22; Pena Decl. ¶¶ 7-8). Pena went after Perez, and told him to "think about what you're doing," i.e. whether he really wanted to quit, and if Perez was actually going to leave, then he would need to turn in his uniforms. If Perez really felt he had just been fired, you would have expected him to angrily respond to Pena. Instead, Perez merely responded "I understand." (Pena Decl. ¶ 8).
> Defendant's Memorandum of Law in support of Motion for Summary Judgment (DE 39-2, page 17)

The Defendant cannot claim on one hand that it never fired the Plaintiff and assert on the other that it was justified in firing him. In fact, even to this stage of the case, the Defendant denies it ever fired Plaintiff.

If Plaintiff quit, then he will not have established a prima facie case. The Defendant will win.

How then can the Defendant assert that the Plaintiff has not shown that it has offered legitimate non-discriminatory reasons to terminate the Plaintiff? Apparently it is asserting that the Plaintiff is charging that he was "constructively discharge", a claim never offered in the pleadings by the Plaintiff.

Make no mistake about Plaintiff's position. Plaintiff claims he was discharged after meeting with Cosmo Adamo, Gary Carlisle and one other manager on April 9, 2009. He says the words used by Adamo left no doubt as to what happened.[2]

If the Defendant were to say that it fired Plaintiff because his work was unacceptable, or because he could not get along with his installer, it could be offer such as a legitimate non-discriminatory reason.

However, they do not offer any of this as an excuse. Instead they say that they did not intend to fire Plaintiff at the time, and did so only later after he did not return from Human Resources  for  "job abandonment". If Plaintiff was already fired, the Defendant cannot re-fire him for some other reason, after he is already gone, in order to create a legitimate non-discriminatory reason for his termination. [3]

---

[2] Indeed Carlisle's Declaration leaves little to the imagination when he says, "At the end of the meeting, Adamo told Perez that if he was unwilling to go into the store that he could leave his badge and go." (Carlisle Declaration DE -39-9, ¶27)

[3] The modern practice of firing the already discharged on seems akin to the medieval practice of executing those who had already died.

"The first corpse trial on record was held in 897CE Rome and concerns Pope Formosus. After eight months in its grave Formosus' corpse was exhumed, dressed in papal robes and seated on the throne to answer old charges against him, which included trying to usurp the papacy. His successor, Stephen VI, screamed his questions at the corpse, which remained unmoved. Formosus was found posthumously and unanimously guilty. Its papal robes stripped, the corpse was then dragged out of the baptistery and buried in a potter's field"

History of Medieval Corpse Trials: Pope Formosus and Executing the Dead | Suite101.com
http://www.suite101.com/content/history-of-medieval-corpse-trials-a183939#ixzz1Nqjtarw7

Simply put Defendant cannot have it both ways. If Plaintiff quit he does not establish a prima facie case. If he does establish a prima facie case, he wins because the Defendant denies firing him.

*Conclusion*

This case presents clear  issues for resolution by a jury. The motion should be denied.

Respectfully submitted,

CORNELL & ASSOCIATES, P.A.
Attorneys for the Plaintiff
2645 Executive Park Drive
Weston, FL 33331
Telephone:  (954) 618-1041
Facsimile:  (954) 944-1969

BY:   /s/ G. Ware Cornell Jr.
G. WARE CORNELL JR.
FBN: 203920

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 31st day of May, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

  /s/ G. Ware Cornell Jr.
G. WARE CORNELL JR.

<u>**SERVICE LIST**</u>

G. Ware Cornell Jr.
Cornell & Associates, P.A.
Attorneys for the Plaintiff
2645 Executive Park Drive
Weston, FL 33331
Telephone:  (954) 524-2703
Facsimile:  (954) 944-1969
<u>ware@warecornell.com</u>

Robert C. Nagle, Esq.
Saul Ewing
Attorneys for the Defendant
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone:  (215) 972-7760
Facsimile:  (215) 973-2296
<u>rnagle@saul.com</u>

Tamatha Suzanne Alvarez, Esq.
Martin, Lister & Alvarez
Attorneys for the Defendant
2893 Executive Park Drive
Suite 204
Weston, FL 33331
Telephone:  (954) 659-9322
Facsimile:  (954) 659-9909
<u>tsalaw@hotmail.com</u>