UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.10-61203-CIV-O'SULLIVAN
[CONSENT]

ANGEL PEREZ and others
similarly situated,

      Plaintiffs,

v.

BRANDS MART SERVICE CORP.,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion for Summary

Judgment (DE# 39, 5/4/11).  Having reviewed the motion, response and reply as well

as the parties' respective statements of material facts and exhibits, including

declarations and transcripts of depositions, and applicable law, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary

Judgment (DE# 39, 5/4/11) is GRANTED for the reasons set forth below.

## INTRODUCTION

The plaintiff filed his Complaint seeking compensation for unpaid minimum wage

compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the

"FLSA") as well as a claim for retaliatory discharge under the FLSA, 29 U.S.C. §

215(A)(2), (3). Complaint (DE# 1, 7/13/10). The plaintiff alleges that the defendant

violated the FLSA by failing to pay him the federal minimum wage for the hours he

spent in the stores under the Same Day Installation Program ("Program").  In the Fall of

2009, BrandMart instituted a new program for same day installation ("Same Day

Installation Program" or "Program").  This Program was intended to counter the adverse

effects of the recession on home installations, and to either increase or stop the decrease in the number of jobs for the Installation Teams.

The defendant contends that it did not violate the FLSA because the FLSA permits employees to be paid on a commission rather than hourly basis. The defendant paid the plaintiff in excess of the federal minimum wage due to its arrangement to pay the plaintiff 100% commission that covered all hours worked on both the productive work that generates compensation and the other non-productive hours (e.g. waiting time, meetings, training). The plaintiff claims that the defendant failed to pay him minimum wage ($7.25/hour) for hours spent in or at retail stores as part of the Program. The plaintiff contends that the defendant did not have the right under the FLSA to add hours or duties to his job (i.e. the Program requiring in-store time and tasks) without additional compensation beyond his commissions. Additionally, the plaintiff claims that his objections to the Program and his request for more money was an assertion of rights under the FLSA, and that he was fired in retaliation for that protected activity.

Additionally, the plaintiff alleges that the defendant violated the anti-retaliation provision of the FLSA by terminating his employment after he complained that he was not paid for the additional work assigned under the Program. Although an issue exists as to whether the plaintiff quit or was fired, the defendant maintains that it is entitled to summary judgment because the plaintiff cannot establish a prima facie case of retaliation and the plaintiff failed to carry his burden of proof on pretext. That is, the plaintiff failed to rebut the defendant's record evidence that the termination, if any, was based on a non-retaliatory ground, i.e. the plaintiff's abandonment of his job based on

2

his refusal to perform the assigned work under the Program.

### FACTS[1]

The plaintiff filed his Complaint seeking compensation for unpaid minimum wage compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") as well as a claim for retaliatory discharge under the FLSA, 29 U.S.C. § 215(A)(2), (3). Complaint (DE# 1, 7/13/10).

#### Minimum Wage

The plaintiff was hired as an installer's helper for the defendant, BrandsMart Service Corp.  His job duties were to assist an installer that installed electronics purchased from the defendant.  The defendant paid the plaintiff on a commission basis. The plaintiff's commission included attending meetings, picking up parts at the warehouse or stores, driving time between jobs, time spent waiting between jobs, and keeping the truck clean.

Installers were treated as full-time employees, working at least 30 hours per week, and thus, eligible for fringe benefits including major medical, vision and dental insurance, paid vacation and sick leave, and a 401(k) plan with a 2% Company match.

In the Spring of 2009, Gary Carlisle, a manager at BrandsMart, implemented a pilot program of same day installation to try to generate more installation jobs and the Program was formally initiated in September 2009. At no time during the Program, did Perez work more than 40 hours in a workweek, including all hours in the stores.  The

---

[1]The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable to the plaintiff, the non-moving party.  Key West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir. 1993).

plaintiff did not go into a store every week.

The defendant guaranteed that all employees who were paid on commission, including the Installation Teams, received at least minimum wage for all hours worked up to 40 in a workweek.  If an employee's commissions failed to meet the minimum wage, BrandsMart supplemented their compensation with "draw pay."  During the plaintiff's employment, none of the electronics installation employees were ever paid draw pay, because their compensation far exceeded minimum wage.  Assuming a forty hour week, the plaintiff's effective rate of pay was over $16 per hour, or more than twice the minimum wage (i.e. $6.55 between 5/08-7/25/09; $7.25 thereafter).

<u>Objections to the Same Day Installation Program/Retaliation</u>

When the Program began in the Fall of 2009, the plaintiff says that when they went to the store he and the Installer, Charlie Freeman, would walk in and "If there's nothing, we can hang out outside, stay in the truck. Just waiting for who knows?" (Perez Depo. p. 39) The plaintiff's perception was that he did not need to stay in the T.V. Department and that only his Installer had anything to do with the salespeople. (<u>Id</u>. at p. 39-40).

Perez' perception was that the Program changed sometime in 2010.  His primary source of information was the Installer with whom he worked.  The plaintiff originally claimed that the Installer told him that they would need to do merchandising and other tasks in the T.V. Department, but later changed his description of what the Installer told him, stating that they were required to be inside the store, in the T.V. Department, working with the salespeople.

Perez claims that he did not have any objection to being required to go inside the

4

stores, waiting around the T.V. Department and talking to the salesmen or customers, even if he did not receive additional compensation, because that was what he was doing for most of the Program.  (Id. at p.125-27) He objected to the Program because it would require him to work in the store without getting paid. (Id. at p. 44, 126-27).  The plaintiff never performed any tasks in the store. (Id. at pp. 47-49).  The plaintiff said he "didn't give a chance until they pay me for it." (Id. at p. 49).

In March 2010, the plaintiff spent one day waiting in the truck, refusing to accompany the installer into the Deerfield Beach store.  In subsequent discussions with his supervisors, the plaintiff made it clear that he would not do what he was being asked, or even go into the stores to wait for jobs, unless he was given more money. (Id. at pp. 51-54, 57-58, 64-65)

The plaintiff objected to the Program in the following ways: 1) his initial note of 5 hours at a store on 2/26/10 for which he asked to be paid $100 ($20/hour), then notes of "free" on subsequent submissions; his two discussions with Gary Carlisle; his call to Human Resources on April 8, 2010; and his meeting with Messrs. Adamo, Carlisle and Pena on April 9, 2010.  The plaintiff did not mention the FLSA in any of these discussions.

On April 9, 2010, the plaintiff, and Cosmo Adamo, Vice President of Service at BrandsMart, Gary Carlisle, a manager at BrandsMart, and Edmundo ("Mundy") Pena, the General Manager of Service, participated in a meeting at the Service Center in Mr. Adamo's office, which lasted approximately 30-45 minutes.  Mr. Adamo did most of the talking during the meeting. (Id. at pp. 66-67; Carlisle Depo. at pp. 54-56, 59; Adamo Depo. at pp. 9-10; Pena Decl. ¶ 5).  The plaintiff explained that "he did not want to go

5

into the store, he didn't think it was fair.  He didn't think it was fair that he wasn't getting paid for going into the store."  (Perez Depo. at p. 9)

Mr. Adamo said, "[I]t doesn't seem like you're understanding or that you are going to do what we are discussing here today. [Mr. Perez] says I am not going to the store, I am not going to work for free." (Adamo Depo. at pp. 10-11).

Gary Carlisle testified "[a]t the end of the meeting, Adamo told Perez if he was unwilling to go into the store that he could leave his badge and go." Carlisle Decl. ¶ 27 (DE# 39-9, 5/4/11).

There was no discussion of what assignments or tasks, if any, he would be expected to perform while in the stores, other than Adamo mentioning the use of stickers to promote Installation services.  The understanding of Adamo, Carlisle and Pena was that the plaintiff was refusing to go in the store at all, just as he had done on April 2, without additional pay. (Adamo Decl. ¶¶ 19-21; Carlisle Depo. at pp. 57-60; Carlisle Decl. ¶ 26 ; Pena Decl. ¶ 5; Perez Depo. at 68-69).

Mr. Adamo stated that "I said I need you to please go back to work, please follow your schedule and please follow your tasks as Gary [Carlisle] assigned to you. [Mr. Perez] said I am not going into the store and he approached the doorway in the room." (Id.)  "As he approaches the door, I said if you are leaving us, we need for you to leave us your badge. [Mr. Perez] says I am not leave you my badge.  He says I am going to go across the street to HR.  I said okay, if that is what you want to do, you can do that, too.  And he walked out the door, my office door."  (Id. at pp. 11-12).

Mr. Carlisle's recollection is that Mr. Adamo told the plaintiff "if you are not going to participate in the program, then you can leave your badge and go" and the plaintiff

responded "I can't do that or I refuse to do that" or something to that effect.  (Carlisle Depo. at p. 59).

In response to the plaintiff's statement that "I don't work unless you pay me," the plaintiff states that Mr. Adamo replied "it's clear you don't want to do what we ask you to do. So from now on, you're no longer working for us, please return your badge, and good luck."  (Perez Depo. at p. 71).

All three managers present were surprised when Mr. Perez walked out, and did not know whether Mr. Perez was going to HR to complain or to quit.  (Adamo Depo. at p. 12; Adamo Decl. ¶¶ 22,24; Carlisle Decl. ¶ 27; Pena Decl. ¶¶ 7-8).  Mr. Pena went after Mr. Perez and told him to "think about what you're doing," i.e. whether he really wanted to quit, and if the plaintiff was actually going to leave, then he would need to return his uniforms.  The plaintiff responded "I understand." (Pena Decl. ¶ 8).

On April 23, 2010, HR processed the plaintiff's termination for job abandonment after he did not return to work.  The first time the Vice President of HR was aware that the plaintiff was claiming he had been fired was at the appeal of his denial of unemployment compensation. (Witczak Decl. ¶ 23; Adamo Decl. ¶¶ 23-24; Carlisle Decl. ¶ 26).

The plaintiff did not mention the FLSA when he communicated his objections to the Program and his refusals to work for free with Messrs. Carlisle and Adamo as well as HR representatives.  Defendant's Statement of Material Facts ¶¶ 25-26, 28-29, 30-31. (DE# 39-1, 5/4/11)

## LEGAL ANALYSIS

### I.    STANDARD OF REVIEW

The court, in reviewing a motion for summary judgment, is guided by the

standard set forth in Federal Rule of Civil Procedure 56( c), which states, in relevant

part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(c).  The moving party bears the burden of meeting this exacting

standard.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H.

Kress & Co., 398 U.S. 144, 157 (1970).  That is, "[t]he moving party bears 'the initial

responsibility of informing the . . . court of the basis for its motion, and identifying those

portions of the 'pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, which it believes demonstrate the absence of a

genuine issue of material fact.'"  U.S. v. Four Parcels of Real Property, 941 F.2d 1428,

1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).  In assessing whether the

moving party has satisfied this burden, the court is required to view the evidence and all

factual inferences arising therefrom in the light most favorable to the non-moving party.

Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994); Sheckells v. Agv-Usa Corp., 987

F.2d 1532, 1534 (11th Cir. 1993); Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir.

1990); Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982);

Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th

Cir. 1988)(per curiam). Summary judgment is appropriate when there is no dispute as

8

to any material fact and only questions of law remain.  Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).  If the record presents factual issues, the court must deny the motion and proceed to trial.  Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial.  Celotex, 477 U.S. at 322-323.  Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court noted in Celotex,

> [T]he plain language of Rule 56( c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id.  at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  There must be evidence on which the jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 251; Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## II.   DISCUSSION

### A.   Mimimum Wage

Plaintiff seeks recovery of minimum wage compensation under the FLSA in Count I.  The plaintiff acknowledges that "Plaintiff's employment as an outside installer

with the Defendant provided for compensation on a commission basis" and claims that the defendant failed to pay the plaintiff for all hours worked in the store. (Complaint at ¶ 8-9).

The plaintiff understood that he was paid "a hundred percent on commission" and that part of his job requirements, which were covered by his commissions, included attending meetings, picking up parts at the warehouse or stores, driving time between jobs, time spent waiting between jobs, and keeping the truck clean. (SMF ¶ 6, Perez Depo. at pp. 32-33).

When the Program began in September 2009, the plaintiff did not mind hanging around the stores.  In February or March of 2010, when the plaintiff perceived that the Program was changing, the plaintiff complained that he wanted more money to go into the stores, and objected that he should not have to "work for free." (SMF ¶¶ 21-22). Despite repeated efforts by others to explain the nature of commission compensation, the plaintiff maintained that he was not willing to participate in the Program, and in particular objected to "physically working" in the stores without additional pay.

        1.     The Plaintiff Was Paid Well-Above Minimum Wage for all Hours Worked, Including the Time He Spent in Stores, under a Lawful Commission Arrangment.

The FLSA minimum wage provision requires employers to pay employees a minimum wage of not less than $7.25 an hour.[2]  29 U.S.C. §206(a)(1)(C).  The federal minimum wage provision is not violated

_____

     [2]The applicable federal minimum wage during the plaintiff's employment increased from $6.55 per hour from May 2008 until July 25, 2009, to $7.25 per hour for the duration of the plaintiff's employment.

so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960); see Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1256 (11th Cir. 2001)(analyzing the commission exemption for overtime compensation and explaining that the regular rate of pay is calculated by dividing all of the employer's total compensation for the workweek by the number of hours worked); see also Walters v. American Coach Lines of Miami, Inc., 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008) ("[I]t is the workweek as a whole rather than each individual hour within a workweek that is the relevant unit for determining compliance with the minimum wage requirement.") (citations omitted); 29 C.F.R. §§ 778.117 et seq. ("Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate....")

The defendant acknowledges that the plaintiff was entitled to minimum wage for all hours worked (other than breaks) from the time he started at the warehouse, store or customer's home for his first job or to pick up parts, any hours spent in the stores under the Program regardless of whether he was hanging around or performing tasks and until he finished his last job.  Memorandum of Law in Support Defendant's Motion for Summary Judgment (DE# 39-2 at 6; 5/4/11) Travel time between jobs, waiting for customers, and hours spent in the stores under the Program were included.

There is no dispute that the plaintiff was paid a commission.  There is no claim for overtime pay and the plaintiff does not assert that the time he spent in the stores

caused him to work more than 40 hours.  The plaintiff averaged 35 hours or less and never more than 40 hours per week. (Carlisle Decl. ¶¶ 12, 16-17) During his entire employment, the plaintiff's compensation always exceeded the minimum wage.  During the 10 pay periods when he was in the stores during the Program, his average weekly commissions were $1,345, which is an effective hourly rate of over $16.00, more than twice the minimum wage. (SMF ¶ 20, Witczak Decl. ¶¶ 17-19 and Ex. B)

The plaintiff has not and cannot show that he was paid less than minimum wage for the hours he was required to work by the defendant because the plaintiff never earned less than minimum wage.  His lowest pay from the defendant was nearly twice minimum wage (i.e. $16.00 per hour).

In Caci v. Wiz of Lake Grove, Inc., 267 F. Supp. 2d 297 (E.D.N.Y. 2003), the district court granted summary judgment in the employers' favor on the plaintiff's minimum wage and retaliation claims.  The plaintiff was a sales associate who claimed that his employer did not pay him minimum wage for all of his hours.  Caci was paid by commissions and an hourly draw.  Caci complained that he was not being paid for the hours he worked cleaning and maintaining his work area after the store closed because he was unable to earn any commission during that time.  Id. at 298.  Caci refused to work after the store closed and was terminated.  Id. at 298-99.  The district court determined that "[d]espite Caci's contention that he was not paid for the hours he worked after the store closed because he was unable to make any sales and, therefore, to earn any commissions during those hours, the undisputed facts demonstrate that Caci was paid at least the required minimum wage for every hour worked, that is, Caci's weekly pay divided by the total hours he worked - including hours he worked after the

12

store closed - yielded an hourly rate exceeding the required minimum wage...." Id. at 300 (citations omitted).

The plaintiff seems to contend that the defendant had no right to ever increase or change the duties or hours covered by his commissions.  Plaintiff cites no case law for this proposition; does not address any of the relevant DOL regulations; and does not discuss or distinguish the Caci case.  "The Act does not preclude an employer from lowering an employee's hourly rate, provided the rate paid is at least the minimum wage, or from reducing the number of hours the employee is scheduled to work."  See DOL Wage and Hour Division, *Fact Sheet #70: Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues* (Nov. 2009).

Like the plaintiff in Caci, the plaintiff in the present case was paid at least the required minimum wage for every hour worked, including those in-store under the Program.  "As a general rule, an employee cannot succeed on a claim under the FLSA if his average wage for a period in which he works no overtime exceeds minimum wage."  Bolick v. Brevard County Sheriff's Dept., 937 F. Supp. 1560, 1568 (M.D. Fla. 1996)(citations omitted).  "Letter opinions issued by the U.S. Department of Labor's Wage and Hour Division support this general rule."  Id. at 1568-69.  The plaintiff has failed to show that he was not paid the required minimum wage for all hours worked. Moreover, it is undisputed that the plaintiff never performed the work under the Program for which he now claims he was entitled to additional compensation.  The defendant is entitled to judgment as a matter of law on Count I (minimum wage) of the plaintiff's Complaint.

### B.    Retaliation

With respect to the retaliation claim, the plaintiff alleges that "[o]n April 3, 2010, shortly after complaining to his supervisor about the Defendant's failure to pay minimum wage for each hour worked, Plaintiff was terminated from employment."  Complaint ¶ 18 (DE# 1, 7/13/10). The defendant argues that it is entitled to summary final judgment on the retaliation claim on three separate grounds: the plaintiff's inability to establish two of the elements of his *prima facie* case (protected activity and adverse action) and his ultimate burden of proving pretext. <u>See</u> Defendant's Motion for Summary Judgment at 2 (DE# 39, 5/4/11); Memorandum of Law in Support of Defendant's Motion for Summary Judgment (DE# 39-2, 5/4/11); and Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment (DE# 44, 6/7/11) .

Section 215(a)(3) of the FLSA prohibits employers from

> discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>See</u> <u>Raspanti v. Four Amigos Travel, Inc.</u>, 266 Fed. Appx. 820, 822 (11th Cir. 2008).

Under this framework, the plaintiff must first establish a prima facie case of retaliation. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.  "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) [he] engaged in

14

activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 208-09 (10th Cir.1997)). The employer must then articulate a legitimate non-retaliatory reason for the adverse employment action. Raspanti, 266 Fed. Appx. at 822.  "[T]he defendant's burden of rebuttal is exceedingly light."  Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir. 1983). "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." Wolf, 200 F.3d at 1343. "In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  Id. (citation omitted).

      **a.**     **Protected Activity**

          1.   <u>Notice</u>

The defendant argues that it is entitled to summary final judgment on the plaintiff's retaliation claim because the plaintiff has not shown that he engaged in a protected activity. See Def.'s Motion (DE# 39, 5/4/11).  Protected activity within the meaning of the FLSA includes filing a complaint alleging FLSA violations, instituting a FLSA proceeding, or providing (or about to provide) testimony in a FLSA proceeding. See 29 U.S.C. § 215(a)(3).  The defendant argues that the plaintiff's complaints do not rise to the level of protected activity and that he did not have an objectively reasonable, good faith belief that BrandsMart was violating the law.  The Court agrees.

The Eleventh Circuit has held that informal complaints to a private employer can constitute an assertion of rights protected under the anti-retaliation provision of the

FLSA.  E.E.O.C. v. White and Son Enterprises, 881 F.2d 1006, 1011  (11th Cir.

1989)(concluding that "the unofficial complaints expressed by the women to their

employer about unequal pay constitute an assertion of rights protected under the

statute"); contra, Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325,

1337 (2011) (Scalia, J., dissenting) ("The plain meaning of the critical phrase ['filed any

complaint'] and the context in which [it] appears make clear that the retaliation provision

contemplates an official grievance filed with a court or an agency, not oral complaints –

or even formal, written complaints – from an employee to an employer.").

        In  Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1335

(2011), the Supreme Court concluded, consistent with White and Son, that the term

"filed any complaint" did not require a writing, and could include oral complaints.  The

Supreme Court did not address the issue of whether the anti-retaliation provision only

applies to complaints made to the government that is, not to a private employer. The

Supreme Court was sensitive to the argument that an employer must have fair notice

that the employee is making a complaint about a violation of the FLSA and stated:

> the phrase "filed any complaint" contemplates some degree of formality,
> certainly to the point where the recipient has been given fair notice that a
> grievance has been lodged and does, or should, reasonably understand
> the matter as part of its business concerns.

Id. at 1334.  In Kasten, the Supreme Court explained,

> [t]o fall within the scope of the antiretaliation provision, a complaint must
> be sufficiently clear and detailed for a reasonable employer to understand
> it, in light of both the content and context, as an assertion of rights
> protected by the statute and a call for their protection.

Id.  In Kasten, the Supreme Court held that "[t]his standard can be met, however, by

oral complaints, as well as by written ones."  Id.  The Supreme Court did not entertain

16

Saint-Gobain's alternative argument that the anti-retaliation provision applies only to complaints filed with the government, not the employer. Id. at 1336; contra, Kasten, 131 S. Ct. at 1337 (Scalia, J., dissenting) (criticizing the majority's refusal to entertain the issue and determining that "'complaint' in the FLSA refers to an official filing with a governmental body").   In Kasten, the Supreme Court found that "the Seventh Circuit erred in determining that oral complaints cannot fall with the scope of the phrase 'filed any complaint' in the Act's antiretaliation provision" and left it to the "lower courts to decide whether Kasten will be able to satisfy the Act's notice requirement." Kasten, 131 S. Ct. at 1336.

The defendant argues that "[g]iven the context, Perez' complaints do not meet the degree of specificity required by [Kasten].  An employee who is making twice minimum wage who demands more money for a perceived change in his duties does not put a reasonable employer on notice that he is asserting rights or a violation of the FLSA."  Def.'s Memo. (DE# 39-2 at 17-18; 5/4/11).  The defendant concedes that "Perez' complaints did have some degree of formality when he went to Human Resources," but argues that "his complaints were not 'sufficiently clear and detailed' for BrandsMart to understand, in light of both the content and context, that he was asserting rights under the FLSA."  Id. at 17.

The defendant acknowledges that the plaintiff's repeated remarks that he would not "work for free" might seem, in the abstract, like a complaint that he was entitled to minimum wage if he was going to be asked to start doing tasks in the store.  However, in context, the plaintiff was paid commissions that covered tasks beyond simple installation of equipment, including non-productive time such as a waiting time.  The

17

plaintiff's managers knew that BrandsMart guaranteed the plaintiff minimum wage for all compensable hours worked.  Additionally, they knew that the plaintiff was making more than minimum wage in commissions. The plaintiff did not mention the FLSA and did not specifically ask to be paid minimum wage.  The plaintiff's managers understood that the plaintiff was complaining about his compensation, wanted more money for waiting in the stores (e.g. once asking for $20/hour), and that the plaintiff did not agree that his commissions should cover those additional duties.  Demands for more compensation are not protected activity. Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F. Supp. 2d 1272 (S.D. Fla. 2006).

In Alvarado, this Court granted summary judgment for the defendants on the plaintiffs' retaliation claim because the plaintiffs could not show they were engaged in a protected activity. In that case, the plaintiffs' retaliation claim was based, in part, on letters signed by the plaintiffs in February 2005 "requesting, among other things, an increase in salary, reorganization of delivery routes, the cessation of discriminatory comments on the job, and increased courtesy and respect in company memorandums." Id. at 1278. This Court concluded that the February 2005 letters "fail[ed] to meet the elements required for a prima facie case [of retaliation]" because "[t]he letters themselves d[id] not appear to clearly assert rights under the [FLSA] in that they make no specific mention of overtime pay or invoke the FLSA." Id. at 1279.

Nowhere in the plaintiff's statements to management does the plaintiff assert his rights under the FLSA or mention minimum wage. See Alvarado, 410 F. Supp. 2d at 1279; Etienne v. Muvico Theaters, Inc., No. 01-6265-CIV, 2003 WL 21184268, * 18 (S.D. Fla. Mar. 11, 2003) (plaintiff failed to make prima facie retaliation claim under

FLSA where plaintiff did not present evidence "that he threatened to report labor-law violations, or file a complaint about business practices at the theater."). Thus, the plaintiff has failed to establish that he was engaged in a protected activity and the defendant is entitled to summary final judgment on this claim.

### 2.   Objectively Reasonable, Good Faith Belief

Even if the plaintiff satisfied the notice requirement under Kasten, the commissions paid by the defendant exceeded the minimum wage for each hour the plaintiff worked, including in-store hours.  Complaints of legal activity can still be protected if the employee has an objectively reasonable, good faith belief that the employer's conduct is unlawful.  This standard has two requirements: 1) the employee must show that he subjectively, that is in good faith, believed that his employer was violating the law.  Little v. United Techs. Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision).  The employee's complaint does not constitute protected activity unless the belief is both objectively reasonable and in good faith.  Id.; Burnette v. Northside Hospital, 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004)(citing Little, id., and Standard v. ABEL Servs., Inc., 161 F.3d 1318, 1328-29 (11th Cir. 1998)).   The record is devoid of evidence that the plaintiff claimed that he believed in good faith that he was not getting paid for waiting time, and that he was entitled to at least minimum wage for going into the store or performing any duties in the store.

Even if he did meet the subjective good faith belief that he was entitled by law to more compensation, the plaintiff cannot meet the second part of the standard, that he had an "objectively reasonable belief that his employer was engaged in unlawful

19

practices." Padilla v. The North Broward Hosp. Dist., 270 Fed. Appx. 966 (11th Cir. 2008) (Title VII). The plaintiff's belief must have been "objectively reasonable in light of the facts and the record presented." Little, 103 F.3d at 960. "[I]t is presumed that the employee has substantive knowledge of the law" when applying the objective test. Padilla, 270 Fed. Appx. at 966; accord Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998) ("If plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.").

The defendant relies on Burnette v. Northside Hospital, 342 F. Supp. 2d 1128 (N.D. Ga. 2004). In Burnette, the plaintiff complained about a change in his employer's on-call program that resulted in his loss of on-call pay. Burnette, 342 F. Supp. 2d at 1134-35. Burnette was told that his only obligation once he was home was to answer the phone if his supervisor called; he could then choose whether to come in or not. Id. The applicable law is that on-call time is only compensable when the employee's on-call duties severely restrict the employee's use of free time. Id. at 1135. (citation omitted). In Burnette, the district court held that the employee's subjective belief was not objectively reasonable despite his honest belief that the employer was acting unlawfully, and that his complaint was not protected activity. Id. at 1135-36.

Likewise, the plaintiff in the present case cannot satisfy the objectively reasonable requirement. Even if the plaintiff did not know that BrandsMart guaranteed him minimum wage for all hours worked, it is an undisputed fact. The applicable law allows commission payments to cover any hours spent for the benefit of the employer, regardless of how those hours are spent. The FLSA does not prohibit an employer

20

from changing or increasing job duties, hours or assignments, as long as the employee receives at least minimum wage for all compensable hours.  The plaintiff's complaints were not objectively reasonable and thus, cannot constitute protected activity.

      **b.**    **Pretext**

Even assuming the plaintiff can establish a prima facie case for retaliation, the defendant would still be entitled to summary final judgment as a matter of law because the defendant has shown that the plaintiff was terminated for a legitimate reason and the plaintiff has failed to show that the defendant's reason is pretextual. See Alvarado, 410 F. Supp. 2d at 1279 (on summary judgment motion noting that even though a causal connection appeared to exist, "Defendants ha[d] provided a valid reason for their termination and the Plaintiffs ha[d] not met the burden of persuasion that this proffered reason [wa]s pretextual in nature.").  The defendant has shown that it terminated the plaintiff for a legitimate reason – job abandonment based on the plaintiff's refusal to perform assigned tasks under the Program. See Def.'s Memo. (DE# 39-2 at 16, 5/4/11)(citing Statement of Material Facts ¶¶ 31-35)(DE# 39-1, 5/4/11).

Where, as here, the defendant proffers some legitimate, non-discriminatory basis for terminating the plaintiff, the plaintiff must show pretext.  To show pretext, the plaintiff must reveal "'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting Sheridan v. E.I. DuPont de Nemours and Co., 106 F.3d 1061, 1072 (3d Cir. 1996)(other citations omitted)).

21

In his opposition, the plaintiff "claims that he was discharged after meeting with Cosmo Adamo, Gary Carlisle and one other manager on April 9, 2009 [sic]." Additionally, the plaintiff maintains that the words used by Adamo left no doubt as to what happened:  "Indeed, Carlisle's Declaration leaves little to the imagination when [Carlisle] says, 'At the end of the meeting, Adamo told Perez that if he was unwilling to go into the store that he could leave his badge and go.'" Pl.'s Opposition (DE# 43 at 12 n. 2, 5/31/11) (quoting Carlisle Decl. ¶ 27).

Although the plaintiff acknowledges the burden-shifting required by <u>McDonnell Douglas</u>, the plaintiff fails to address pretext and submits no evidence to rebut the defendant's legitimate ground for termination.  The plaintiff's reliance on Mr. Carlisle's testimony fails to rebut the defendant's legitimate ground, i.e. job abandonment based on refusal to perform assigned work.

The plaintiff challenges BrandsMart's decision to implement the Program without first obtaining "advice of counsel."  <u>Id</u>. at 8.  Without citing any legal authority, the plaintiff argues that a jury can find the existence of a good faith belief on the following grounds: 1) the Human Resources department needed to research his objections; 2) the employer unilaterally imposed the additional duties after the plaintiff commenced employment; and 3) the plaintiff repeatedly complained and noted "free labor" on his time sheet and met with HR and Gary Carlisle.  <u>Id</u>. at 9-11.

The plaintiff contends that a jury question exists because the defendant has asserted inconsistent positions. The plaintiff argues that "[t]he Defendant cannot claim on the one hand that it never fired the Plaintiff and assert on the other that it was justified in firing him."  <u>Id</u>. at 11.  The plaintiff concedes that if he quit, he loses his

retaliation claim. Pl.'s Opposition at 11 (DE# 43, 5/31/11)  The defendant is within its rights to assert alternative defenses.

Although there is an issue as to whether the plaintiff quit or was fired, it does not preclude summary judgment.  The defendant denies that it fired the plaintiff at the April 9, 2010 meeting, but admits that it terminated the plaintiff several weeks later for job abandonment.  The defendant has proffered a legitimate reason for his termination that the plaintiff has failed to rebut.  "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." Clark v. Alabama, 141 Fed. Appx. 777, 788 (11th Cir. 2005). "Indeed, '[f]ederal courts do not sit to second-guess the business judgment of employers.'" Id. (citing Combs, 106 F.3d at 1543).

In the instant case, the defendant has proffered a valid reason for terminating the plaintiff, job abandonment due to refusing to perform assigned work, and the plaintiff has not shown pretext.  The facts surrounding the plaintiff's departure on April 9, 2010 following the meeting with his managers contain discrepancies between the parties and within the plaintiff's own testimony (deposition and declaration).  However, taking the facts in the light most favorable to the non-movant plaintiff, the evidence supports the defendant's position that the plaintiff's employment was dependent on his willingness to go into the store.  Whether the plaintiff quit or whether BrandsMart fired him, the plaintiff has failed to put forth any evidence of pretext.  Accordingly, the defendant is entitled to summary final judgment on the retaliation claim.

23

## CONCLUSION

Based on the foregoing, the Court finds that the defendant is entitled to summary final judgment on the plaintiff's minimum wage claim and his retaliation claim. The plaintiff was properly paid in excess of minimum wage for all hours worked. Addtionally, the plaintiff has not shown as a matter of law that he was engaged in a protected activity or that there was a causal connection between his complaints and his alleged termination. Even if the plaintiff can show a prima facie case for retaliation, the defendant has provided a valid reason for the plaintiff's termination. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (DE# 39, 5/4/11) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida this **28th** day of July, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All counsel of record